JOHN C. SHORT v. JOHN GILL, Receiver of the C. F. & Y. V. Railway Co., and Atlantic and Yadkin Railway Co.

(Decided June 5, 1900.)

*Negligence—Contributory Negligence—Proximate Cause— Convicting Evidence—Jurisdiction of Special Terms.*

1. Where there is conflicting evidence proper to be considered by the jury, a motion to nonsuit will not be entertained.

2. Where there are several allegations of negligence, to-wit, the coupling of an unsuitable caboose to the engine; the using an S coupling link; and the running at an excessive rate of speed— while there is an allegation of contributory negligence in that the plaintiff had failed to supply himself with a bell-cord for the trip, and there was conflicting evidence as to the main questions—it was properly submitted to the jury to determine what was the proximate cause.

3. The proximate cause of injury is an expression to denote whose negligence was nearer to the injury. The law seeks to find out who had the last chance to avoid the accident, and holds that party responsible who had the last chance to avoid it.

4. Where there is a total want of jurisdiction apparent upon the face of the proceedings, the Court will of its own motion stay, quash or dismiss the suit. Where such is not the case, the objection must be brought foward by a plea to the jurisdiction —otherwise there is an implied waiver of the objection. *Branch v. Houston*, 44 N. C., 85.

5. His Honor's commission to hold this special term shows upon its face complete jurisdiction, with authority to go on until the business was disposed of. The fact that he took a recess to allow opportunity for holding a regular term, if thought to terminate his jurisdiction, should have been brought forward by plea to the jurisdiction.

CIVIL ACTION for damages for personal injuries received through alleged negligence of defendant, tried before *Timberlake, J.*, at Special June Term, 1898, of GUILFORD Superior Court.

SHORT v. GILL.

The plaintiff testified that he was a yard conductor in the employment of defendant at Greensboro in August, 1896, his duties being confined to shifting cars and making up trains. That about 3 o'clock before day he received orders from Mr. Smith, train dispatcher, his superior officer, to attach a caboose to an engine, both indicated, and proceed at once at a rate of twenty-four miles an hour to Madison, to carry some passengers, and to return, and that he would find everything needed in the caboose, and to hurry up. That he found the caboose was lower than the locomotive, and had to be coupled with an S link, and that there was no bell-cord, as he found out after starting. That he made the trip safely to Madison, but on his return the caboose was derailed twice—the last time he was thrown to the ground, had his skull fractured and received other injuries.

There was conflicting evidence on the part of the defense, in regard to instructions given to plaintiff, as to the suitableness of the coupling, the use of link S, and the rate of speed. The jury found the issues in favor of plaintiff, and assessed his damages at $6,500, for which sum judgment was rendered, and defendant appealed.

The exceptions to Judge's charge are stated in the opinion.

*Messrs. J. T. Morehead,* and *G. M. Rose,* for appellant.
*Messrs. Bynum & Bynum,* and *Z. V. Taylor,* for appellee.

FAIRCLOTH, C. J. This action is for damages, alleged to be the result of defendant's negligence. A general statement of the case is this: That plaintiff was the conductor; that it was his duty to see that his train was properly equipped before pulling out of the yard; that he knew it was not so equipped, and was therefore guilty of contributory negligence, as he started out without a bell-cord, and the car ran a long

distance on the cross-ties after it had jumped the track, because he could not stop the train for want of the bell-cord, and that finally the plaintiff either fell off or jumped off, and was injured. The plaintiff claims that defendant was negligent to his injury, in that (1) it caused a comparatively light car to be attached to a powerful engine; (2) that the coupling iron was inferior to those in general use. The witnesses call it a goose neck or S link, by which we understand an iron bent thus, so as to connect the car with a base lower than that of the engine; (3) that the speed of the train ordered to be run was too fast for a train of this character.

Several witnesses were examined, and there were no exceptions to the evidence. There was some conflict in the evidence of the conductor and the engineer as to the rate of speed when the injury occurred, and as to the orders received by the latter from the company, and from the conductor himself.

The first exception was the refusal of his Honor to nonsuit the plaintiff under the Act of 1897, chap. 109. There was no error here as there was manifestly conflicting evidence proper to be considered by the jury.

The fourth exception was that the Court had no authority to try the case at an adjourned day of the special term ordered by the Governor to "continue until business is disposed of" in civil cases only. A regular term of the Superior Court was held during the recess of the special term. No objection to the jurisdiction was made before the Judge holding the special term, but was first made in this Court. This the defendant may do if this Court can see that the Superior Court was without jurisdiction. This motion raises an important question. Counsel cited no authority nor did he refer to the distinction which is decision against his motion. There is perhaps no word more frequently used in judicial proceedings than jurisdiction, very often in a general and vague sense, without due regard to precision in its application.

The question arose in *Branch v. Houston,* Busbee (44 N. C.), 85, and the distinction clearly marked, citing English authorities. "If there be a defective, i. e., a total want of jurisdiction apparent upon the face of the proceedings, the Court will, of its own motion, stay, quash or dismiss the suit. This is necessary to prevent the Court from being forced into an act of usurpation, and compelled to give a void judgment."

If, however, "the subject matter is within the jurisdiction, and there be any peculiar circumstances excluding the plaintiff, or exempting the defendant, it must be brought forward by a plea to the jurisdiction. Otherwise there is an implied waiver of the objection, and the court goes on in the exercise of its ordinary jurisdiction."

Applying this clear cut distinction, we see that his Honor on the face of his commission, had complete jurisdiction, with authority equal to that of a Judge holding a regular term, with few unimportant exceptions, and when he organized his court, there was nothing before him to excite a doubt of his authority to go on until the business was disposed of. Having, then, jurisdiction, if anything or circumstance occurred which the parties thought terminated jurisdiction, they are presumed to waive such matters unless they bring them to the attention of the Court by a plea to the jurisdiction. The fourth exception was therefore properly overruled.

The second and third exceptions are to parts of the charge, indicated by "a" and "b." After charging as to the caboose in a manner not excepted to, his Honor said: ("a") "But if you should not so find, you will proceed to the next allegation of negligence, to-wit, the use of goose-neck link or coupling. There is evidence on the part of plaintiff tending to show that it was dangerous and unsafe, and evidence on the part of defendant that it was not. You must consider it all together with the facts and circumstances surrounding the accident, and ascertain the facts. The burden is here again

on the plaintiff, and unless satisfied by the greater weight of evidence that a prudent man in the exercise of ordinary care would not have, under the circumstances, used such a coupling you will find that it was not negligence to use it. If you are so satisfied, you will say, yes, provided you find plaintiff's injury was caused thereby—and not consider or trouble yourself with the other allegations of negligence. If not so satisfied you will consider the allegation of negligence in giving a maximum rate of speed of twenty-four miles per hour—by train dispatcher—and so running by engineer." He then told the jury that the burden was on the plaintiff, and directed them to consider all the facts and circumstances. He further said : ("b") "But before you can find the second issue yes, you must find that the plaintiff's negligence was the proximate cause of the injury. That is to say that his negligence was nearer the injury than that of defendant. The law seeks to find out who had the last chance to avoid the accident, and holds that party responsible who had the last chance to avoid it. * * * You must find the defendant negligent either in coupling such a caboose to such an engine; in using an S coupling link, or in running at an excessive rate of speed," and he charged that the burden of the second issue was on the defendant, and that they must find that the defendant's negligence, if any, was the proximate cause, and not the plaintiff's negligence.

It appears from this review that there was conflicting evidence as to the main questions, and the proximate cause was submitted to the jury.

We think that the Court was justified in this case in submitting the question of negligence and proximate cause to the jury, and we see no material error in any part of his charge. Taking the facts as the jury have found them, there is no error in the record.

Affirmed.